**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CION PERALTA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>J. SWETALLA, *et al.*,<br><br>　　　　Defendants. | Case No. 1:18-cv-01023-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THIS ACTION PROCEED ONLY ON PLAINTIFF'S CLAIMS AGAINST DEFENDANT SWETALLA FOR SEXUAL ASSAULT AND EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH AMENDMENT, RETALIATION IN VIOLATION OF THE FIRST AMENDMENT, AND NEGLIGENCE; AGAINST DEFENDANT MACHADO FOR RETALIATION IN VIOLATION OF THE FIRST AMENDMENT; AND AGAINST DEFENDANTS POWERS AND CANO FOR DENIAL OF DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT<br><br>(ECF NO. 1)<br><br>TWENTY-ONE (21) DAY DEADLINE |

Cion Peralta ("Plaintiff"), an inmate at Mule Creek State Prison, is proceeding *pro se* with this civil rights action pursuant to 42 U.S.C. § 1983. On July 30, 2018, Plaintiff commenced this action by filing a Complaint against J. Swetalla, L. Machado, V. Powers, J. Sebok, and Xavier Cano (collectively, "Defendants"). (ECF No. 1). Plaintiff brings claims under the First, Eighth, and Fourteenth Amendments of the U.S. Constitution, as well as the Prison Rape Elimination Act and various provisions of state law.

On November 8, 2018, the Court issued a screening order directing Plaintiff to either (1) file an amended complaint; (2) notify the Court in writing that he is willing to go forward only

with his claims against Defendant Swetalla for sexual assault and excessive force in violation of the Eighth Amendment and retaliation in violation of the First Amendment; against Defendant Machado for retaliation in violation of the First Amendment; and against Defendants Powers and Cano for denial of due process in violation of the Fourteenth Amendment; or (3) notify the Court in writing that he wishes to stand on his complaint, subject to the Court issuing findings and recommendations consistent with this order to the assigned district judge. (ECF No. 5).

On November 19, 2018, Plaintiff filed a response to the screening order. (ECF No. 6). Plaintiff states that he agrees with the Court's analysis of the Complaint, except that he disagrees with the Court's finding that he did not comply with the Tort Claims Act. *Id.*

Plaintiff is correct. In the Complaint, Plaintiff states, "All of these claims are exhausted through the state via the Victims Compensation Government Claims Board, and the plaintiff has attached proof of such to this complaint." (ECF No. 1 at 5). Plaintiff also attaches to the Complaint correspondences with the California Victim Compensation and Government Claims Board. (ECF No. 1 at 13-19). Thus, Plaintiff has alleged compliance with the Tort Claims Act.

Accordingly, and for the reasons discussed below, the Court recommends that this action proceed on Plaintiff's claims against Defendant Swetalla for sexual assault and excessive force in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and negligence; against Defendant Machado for retaliation in violation of the First Amendment; and against Defendants Powers and Cano for denial of due process in violation of the Fourteenth Amendment. The Court further recommends dismissal of all other claims and defendants, including Defendant Sebok.

**I.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. SUMMARY OF THE COMPLAINT

### A. Defendant Swetalla (Claim I)

Plaintiff alleges that in May 2015, while Plaintiff was housed at the California Correctional Institution ("CCI) at Tehachapi, California, Officer D. Knowles and Defendant Officer J. Swetalla threatened Plaintiff with physical violence if he did not mind his own business. These threats were a result of Plaintiff writing to the U.S. Attorney and the FBI. Swetalla told Plaintiff that he (Swetalla) had a copy of Plaintiff's letter to the FBI and also told Plaintiff that "complaints do not leave the prison." (ECF No. 1 at 3.) Plaintiff was attempting to contact agencies outside the prison for help because of the extreme corruption at Tehachapi, and this made prison staff extremely angry.

On October 27, 2015, Swetalla took Plaintiff to the gymnasium "under the guise of an unclothed body search." (*Id.* at 4.) Following orders, Plaintiff turned around and faced the

3

wall. "This is when defendant Swetalla began hitting plaintiff in the back of the head about 5 times. Defendant Swetalla then yelled some words and shoved an object between plaintiff's butt cheeks." *Id.* At this point, Plaintiff was in shock and fearing for his life, and did not hear what Swetalla said. "Now, for the second time, defendant Swetalla again shoved this object between plaintiff's butt cheeks to his anus. Swetalla then state[d]: 'Keep your fucking mouth shut.'" *Id.* Swetalla engaged in this conduct in retaliation for Plaintiff's acts of reaching outside the prison to seek help, and to oppress, threaten, and degrade Plaintiff.

### B. Defendant Machado (Claim II)

Plaintiff suffered extreme emotional trauma as a result of the sexual and physical assault by Swetalla. Plaintiff was seen by C. Sanders, a psychologist at CCI, to deal with this trauma. Plaintiff begged Sanders not to report the assault, but Sanders reported it anyway, which placed Plaintiff in danger from the guards in charge of Facility C. "Although [Sanders] was only doing her job and what she thought to be right, it still placed plaintiff in danger." (ECF No. 1 at 8.)

After Sanders reported the sexual assault of Plaintiff by Swetalla, Defendant Officer L. Machado, a prison guard supervisor, began threatening, degrading, and cussing at Plaintiff, stating, "You won't wake up once we get you to administrative segregation." *Id.* Rather than do his job as supervisor, Machado "refused to call OIA [the Office of Internal Affairs] and report plaintiff's complaints as required by well established federal law. Specifically, L. Machado refused to help the plaintiff and do his legal duties as the Prison Rape Elimination Act mandates." *Id.* Instead, Machado "called the plaintiff stupid, a piece of shit, and all types of other vile names all for reporting these crimes by [Macahdo's] subordinates." *Id.*

Plaintiff informed Machado of the extreme corruption and abuse of Plaintiff by the guards, and begged Machado several times to contact the OIA, and report the assault. However, Machado refused to do so and refused to document the acts of sexual violence against Plaintiff, and instead threatened, degraded, and cussed at Plaintiff, and called Plaintiff names.

### C. Defendant Sebok (Claim III)

Almost a month after the physical and sexual assault occurred, Defendant Officer

J. Sebok took Plaintiff's audio and video statement while Plaintiff was at the California State Prison, Los Angeles County ("CSP-LAC") in Lancaster, California. (ECF No. 1 at 9.) Plaintiff asked Sebok who decides whether Plaintiff's case goes to OIA, and Sebok responded, "It's me, I decide if it goes or not." *Id.* Sebok had a duty to report the sexual assault to OIA yet he refused to do so. As a result, the physical and sexual assault of Plaintiff has never been investigated by OIA or California Department of Corrections and Rehabilitation ("CDCR") staff. (*Id.* at 9-10.)

### D. Defendants Powers and Cano (Claim IV)

On November 16, 2015, Plaintiff was placed in a "very restrictive and oppressive" administrative segregation ("Ad-Seg") at CSP-LAC. Plaintiff was placed in Ad-Seg because he had been sexually assaulted while housed at CCI. Plaintiff should have, instead, been placed into the general population because Plaintiff was at no time in danger from other inmates at CSP-LAC—the sexual assault had occurred at a different prison (CCI) and was perpetrated by staff, not other inmates. "Despite these obvious and documented facts, it was almost three months before plaintiff was released from Ad-Seg and placed back in the general population." (ECF No. 1 at 11.) Plaintiff also requested, but was denied, placement in non-disciplinary segregation.

That Plaintiff was finally placed back in the general population demonstrates that Plaintiff had never been in any danger at CSP-LAC and that his placement in Ad-Seg was not justified. "There was no just or legal reason for defendants V. Powers, or Xavier Cano to place and keep plaintiff in such oppressive living conditions because he was victimized at a completely different prison." *Id.*

## III. ANALYSIS OF PLAINTIFF'S CLAIMS

### A. Defendant Swetalla (Claim I)

#### 1. *Eighth Amendment Sexual Assault Claim*

Sexual harassment or abuse of an inmate by a corrections employee is a violation of the Eighth Amendment. *Wood v. Beauclair*, 692 F.3d 1041, 1045-46 (9th Cir. 2012) (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) ("In the simplest and most absolute

1  of terms . . . prisoners [have a clearly established Eighth Amendment right] to be free from
2  sexual abuse. . . .")). "[S]exual contact between a prisoner and a prison [employee] serves no
3  legitimate role and is simply not part of the penalty that criminal offenders pay for their
4  offenses against society.  Where there is no legitimate penological purpose for a prison
5  official's conduct, courts have 'presum[ed] malicious and sadistic intent.'" *Wood*, 692 F.3d at
6  1050-51 (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999)). Even
7  sexual contact that is not violent and leaves no physical injury is presumed unlawful when
8  committed with malicious and sadistic intent. *Id*.

The Complaint states a claim against Defendant Swetalla for sexual assault in violation of the Eighth Amendment based on allegations that Swetalla shoved an object between plaintiff's butt cheeks and pushed it to Plaintiff's anus.

### 2. *Eighth Amendment Excessive Force Claims*

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the court looks to the "extent of injury suffered by an inmate . . ., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9.

The Complaint alleges that Swetalla took Plaintiff to the gymnasium "under the guise of an unclothed body search," hit Plaintiff in the back of the head about five time, and shoved an object between Plaintiff's butt cheeks and anus. Plaintiff alleges that Swetalla engaged in this conduct only because Plaintiff was reaching outside the prison to seek help, and that Plaintiff still has bumps on his head from this incident. The Complaint states a cognizable claim against Defendant Swetalla for use of excessive force in violation of the Eighth Amendment.

### 3. First Amendment Retaliation Claims

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First `Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted). Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, the plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the "logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this'"). A plaintiff can allege retaliatory intent (factor three) by alleging a chronological time line of events from which retaliation can be inferred. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

To state a claim for retaliation, a plaintiff must allege specific facts demonstrating that a defendant took an adverse act because of plaintiff's First Amendment activity. The plaintiff's protected conduct must have been "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1271 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir.1989)). The adverse action must not have reasonably advanced a legitimate correctional goal.

The Complaint alleges that Defendant Swetalla threatened and physically and sexually assaulted Plaintiff because Plaintiff was reaching outside of the prison to seek help by writing

7

letters to the U.S. Attorney and the FBI. These allegations are sufficient to state a claim against Defendant Swetalla for retaliation in violation of the First Amendment.

### 4. *State Law Negligence Claim*

To state a cognizable claim for negligence under California law, plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Wells Fargo Bank, N.A. v. Renz*, 795 F.Supp.2d 898, 924–25 (N.D.Cal.2011) (citing *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003)). A duty of care may arise through statute, contract, the general character of the activity, or the relationship between the parties. *The Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal.App.4th 595, 604–05 (2001) (citing *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 803 (1979)). Further, where the state law negligence claim is asserted against a state employee, the complaint must allege compliance with the California Tort Claims Act.

The California Tort Claims Act requires, as a condition precedent to suit against a public entity or public employee, the timely and proper presentation of a written claim and the rejection of the claim in whole or in part. *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995) (citing *Snipes v. City of Bakersfield*, 145 Cal.App.3d 861 (1983)). "Where compliance with the Tort Claims Act is required, the plaintiff must allege compliance or circumstances excusing compliance, or the complaint is subject to general demurrer." *Id.*; *see also Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (state tort law claims are barred unless presented to public entity before commencing suit) (citing Cal. Gov't Code §§ 905, 945.4, 950.2); *Ortega v. O'Connor*, 764 F.2d 703, 707 (9th Cir. 1985) (failure to comply with claim-filing requirements imposed by California Torts Claims Act bars pendent state claims), *rev'd on other grounds*, 480 U.S. 709 (1987); *Neal v. Gatlin*, 35 Cal.App.3d 871, 877-78 (1973) (where public employee was acting within employee's express or implied authority, notwithstanding wrongful nature of the act, complaint based on such act was properly dismissed for failure to allege filing of claim with employing public entity).

Here, the Complaint alleges facts demonstrating that Defendant Swetalla had a duty to refrain from using unnecessary and excessive force against Plaintiff, and that Swetalla breached

that duty when he physically and sexually assaulted Plaintiff, causing Plaintiff physical and emotional trauma. The Complaint further alleges compliance with the California Tort Claims Act. Accordingly, the Complaint states a cognizable claim for negligence against Defendant Swetalla.

### 5. *Prison Rape Elimination Act Claim*

Plaintiff seeks to bring a claim for violation of the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601 ("PREA"). The PREA does not, however, create a private right of action. *See, e.g., Bell v. County of Los Angeles*, 2008 WL 4375768 (C.D. Cal. 2008) ("Plaintiff has no claim under the Prison Rape Elimination Act; the Act does not create a private right of action."); *Porter v. Jennings*, 2012 WL 1434986, at *1 (E.D. Cal. 2012) (noting same). Rather, the PREA was enacted to study the problem of prison rape. *Pirtle v. Hickman*, 2005 WL 3359731 (D. Idaho 2005). Nothing in the Act suggests that it created a private right of action, enforceable under § 1983. *See Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) (statutory provision gives rise to federal right enforceable under § 1983 where the statute "unambiguously imposed a binding obligation on the States" by using "mandatory, rather than precatory, terms"). The PREA in itself contains no private right of action, nor does it create a right enforceable under § 1983. The Complaint accordingly fails to state a claim based on a violation of the PREA against Defendant Swetalla.

### 6. *15 CCR § 3401.5(a)(2)(D), (F) Claim*

California Code of Regulations, Title 15, section 3401.5,[1] prohibits CDCR staff from engaging in sexual misconduct involving or directed at an inmate or parolee. 15 CCR 3401.5(a). The existence of this and the other regulations under Title 15 does not entitle Plaintiff to bring a civil claim seeking damages for violation of the regulations. Accordingly, Plaintiff cannot state a claim for relief under 15 CCR § 3401.5(a)(2)(D), (F). *See e.g.*, *Davis v.*

---

[1] Although the Complaint cites to 15 CCR § 3401, rather than § 3401.5, the Court assumes Plaintiff intended to rely on § 3401.5 because that section prohibits CDCR staff from engaging in sexual misconduct directed at an inmate and requires reporting of incidents of sexual misconduct. However, whether Plaintiff intended to rely on § 3401 or § 3401.5, the result is the same—neither section provides a private right of action to Plaintiff.

*Powell*, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2012) ("There is no implied private right of action under title fifteen of the California Code of Regulations"); *Hill v. White*, 2014 WL 711016, at *5 (E.D. Cal. 2014) (Title 15 of the California Code of Regulations does not provide a private right of action); *Vasquez v. Tate*, 2012 WL 6738167, at *9 (E.D. Cal. 2012) (same).

### B. Claims against Defendant Machado (Claim II)

For the reasons discussed *supra*, Plaintiff's claims against Defendant L. Machado based on violation of the PREA and violation of provisions of Title 15 of the CCR are not cognizable.

Plaintiff also alleges that Machado threatened Plaintiff by stating to Plaintiff, "You won't wake up once we get you to administrative segregation," in response to finding out that Plaintiff had complained about the sexual and physical assault by Swetalla. These allegations are sufficient to state a claim for retaliation against Machado. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (setting forth elements of retaliation claim and noting that "'the mere threat of harm can be an adverse action'" sufficient to support a claim for retaliation) (citation omitted).

The Complaint also alleges a claim for negligence under California law but does not allege facts demonstrating that Machado breached a duty of care that he owed to Plaintiff that caused injury to Plaintiff. *See Ladd v. County of San Mateo*, 911 P.2d 496, 498 (Cal. 1996) (elements of a general negligence claim under California law are "'(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury'").[2] Accordingly, the Complaint fails to state a cognizable claim for negligence against Defendant Machado.

### C. Claims against Defendants Sebok (Claim III), Powers, and Cano (Claim IV)

For the reasons discussed *supra*, Plaintiff's claims against Defendants Sebok, Powers, and Cano based on violation of the PREA and violation of provisions of Title 15 of the CCR

---

[2] Plaintiff also alleges a claim of "threatening a victim of sexual assault," and "oppression" against Machado, but does not provide a legal basis in support of such claims beyond a citation to 15 CCR § 3401.5. As noted, Title 15 does not provide a private cause of action and accordingly cannot support a cognizable claim for violation of its provisions.

10

are not cognizable.

Plaintiff also alleges claims against these Defendants for violation of his due process rights and negligence based on Plaintiff's placement into Ad-Seg for a period of almost three months.

### *1. Due Process*

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To prevail on a claim of deprivation of due process, a plaintiff must first establish the existence of a liberty or property interest for which the protection is sought. *See Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).

Liberty interests can arise both from the Constitution and from state law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-27 (1976); *Smith v. Sumner*, 994 F.2d 1401, 1405 (9th Cir.1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question "is within the normal limits or range of custody which the conviction has authorized the State to impose." *Wolff*, 418 U.S. at 557-58; *Smith*, 994 F.2d at 1405.

#### *a. Defendant Sebok*

Plaintiff alleges that his due process rights were violated by Sebok when Sebok refused to report to the OIA or other CDCR officials Plaintiff's allegations that Swetalla sexually and physically assaulted Plaintiff. Plaintiff has not, however, alleged facts demonstrating that he had a protected property or liberty interest in having the alleged assault reported.

Plaintiff cites to 15 CCR § 3401.5(c), which requires an employee who observes or receives information concerning staff sexual misconduct to "immediately report the information or incident," and provides that the failure to report may subject an employee to disciplinary action. 15 CCR § 3401.5(c). As noted previously, the provisions of Title 15 of the CCR do not create a private right of action and thus do not provide a protected property or liberty interest in an inmate who is a victim of sexual misconduct. Sebok's alleged violation of a duty to report does not, therefore, create a cognizable claim for violation of due process.

11

### b. Defendants Powers and Cano

Plaintiff alleges Defendants Powers and Cano violated Plaintiff's due process rights by placing and keeping Plaintiff in Ad-Seg for a period of almost three months when Plaintiff was transferred to CSP-LAC.

"[W]hen prison officials initially determine whether a prisoner is to be segregated for administrative reasons due process only requires the following procedures: Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views." *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir. 1986) (footnotes omitted), *abrogated on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995).

Here, the Complaint alleges Plaintiff was placed in Ad-Seg because of the sexual assault of Plaintiff by Defendant Swetalla while Plaintiff was housed at CCI, and that Plaintiff was housed in Ad-Seg for almost three months upon his transfer to CSP-LAC even though the assault had been perpetrated by a corrections officer, and not by fellow inmates, and had occurred at a different prison. The Complaint also alleges that Plaintiff was in no danger and that he should have been housed in the general population when he was transferred to CSP-LAC, or at least in non-disciplinary segregation, rather than in Ad-Seg. Plaintiff alleges that the lack of danger to him is further demonstrated by his eventual transfer to general population.

The Court finds these allegations sufficient, at the screening stage, to state a cognizable claim for denial of due process against Defendants Powers and Cano.[3]

### 2. Negligence

The Complaint also alleges claims for negligence under California law against

---

[3] At various points in his Complaint, Plaintiff also alleges that "staff" refused to provide the names of other staff members and that this refusal violated Plaintiff's due process rights. (*See, e.g.,* ECF No. 1 at 11) ("Another due process act violated was the refusal of staff to provide the names of the staff involved in these criminal acts after this incident was appealed by way of a legal state document."). These vague allegations regarding the refusal of "staff" to provide information do not state a cognizable claim for relief.

12

Defendants Sebok, Powers, and Cano but does not allege facts demonstrating that these Defendants breached a duty of care that they owed to Plaintiff that caused injury to Plaintiff. *See Ladd*, 911 P.2d at 498 (elements of a general negligence claim under California law); *see also Hebbe*, 627 F.3d at 341-42 (although *pro se* pleadings are to be construed liberally, a plaintiff must present factual allegations sufficient to state a plausible claim for relief). Accordingly, the Complaint fails to state a cognizable claim for negligence against Defendants Sebok, Powers, and Cano.

## IV. CONCLUSION AND RECOMMENDATIONS

The Court has screened Plaintiff's Complaint and finds that it states cognizable claims against Defendant Swetalla for sexual assault and excessive force in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and negligence; against Defendant Machado for retaliation in violation of the First Amendment; and against Defendants Powers and Cano for denial of due process in violation of the Fourteenth Amendment. The Court finds that Plaintiff's complaint fails to state any other cognizable claims.

Accordingly, the Court HEREBY RECOMMENDS that:

1. This action proceed only on Plaintiff's claims against Defendant Swetalla for sexual assault and excessive force in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and negligence; against Defendant Machado for retaliation in violation of the First Amendment; and against Defendants Powers and Cano for denial of due process in violation of the Fourteenth Amendment; and

2. All other claims and defendants, including Defendant Sebok, be dismissed.

These findings and recommendations are submitted to the district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned, "Objections to Magistrate Judge's

Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __December 5, 2018__        /s/ Erica P. Grosjean
  UNITED STATES MAGISTRATE JUDGE