UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CION PERALTA, | Case No. 1:18-cv-01023-DAD-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE |
| v. | GRANTED AS TO PLAINTIFF'S DUE PROCESS CLAIM AGAINST DEFENDANT |
| J. SWETALLA, et al., | CANO AND DENIED AS TO PLAINTIFF'S RETALIATION CLAIM AGAINST |
| Defendants. | DEFENDANT MACHADO AND HIS DUE PROCESS CLAIM AGAINST DEFENDANT POWERS |
| | (ECF No. 38) |
| | OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |
| | ORDER GRANTING PLAINTIFF'S REQUEST FOR SANCTIONS IN PART |
| | (ECF No. 48) |

## I.    INTRODUCTION

Cion Peralta ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983, which includes a state law claim.  This case proceeds "on plaintiff's claims against defendant Swetalla for sexual assault and excessive force in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and negligence; against defendant Machado for retaliation in violation of the First Amendment; and against defendants Powers and Cano for denial of due process in violation of the Fourteenth

\\\

1

Amendment." (ECF No. 10, p. 2).[1]

On December 16, 2020, defendants Cano, Powers, and Machado ("Defendants")[2] filed a motion for summary judgment. (ECF No. 38). On January 7, 2021, Plaintiff filed his opposition. (ECF No. 41). On January 14, 2021, Defendants filed their reply. (ECF No. 42). On April 28, 2021, Plaintiff filed a supplemental opposition and request for sanctions, along with a supporting declaration. (ECF Nos. 48 & 49). On June 4, 2021, Plaintiff filed a second supplemental opposition. (ECF No. 54).[3]

For the reasons that follow, the Court will recommend that Defendants' motion for summary judgment be granted as to Plaintiff's Fourteenth Amendment due process claim against defendant Cano and denied as to Plaintiff's First Amendment retaliation claim against defendant Machado and Plaintiff's Fourteenth Amendment due process claim against defendant Powers.

The Court will also grant Plaintiff's request for sanctions in part.

## II.    SUMMARY OF CLAIMS

As described above, this case is proceeding on Plaintiff's claims against defendant Swetalla for sexual assault and excessive force in violation of the Eighth Amendment. Plaintiff's sexual assault claim is proceeding "based on allegations that Swetalla shoved an object between plaintiff's butt cheeks and pushed it to Plaintiff's anus." (ECF No. 9, p. 6; ECF No. 10, p. 2). Plaintiff's excessive force claim is proceeding based on allegations that "Swetalla took Plaintiff to the gymnasium 'under the guise of an unclothed body search,' hit Plaintiff in the back of the head about five time[s], and shoved an object between Plaintiff's butt cheeks and anus.... Swetalla engaged in this conduct only because Plaintiff was reaching outside the prison to seek help, and [] Plaintiff still has bumps on his head from this incident." (ECF No. 9, p. 7; ECF No. 10, p. 2).

Defendant Swetalla has not filed for summary judgment, and the claims against him are

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.
[2] Defendant Swetalla did not move for summary judgment.
[3] As there were issues regarding the production of discovery, the Court allowed Plaintiff to file both supplemental oppositions. (ECF No. 46, p. 11; ECF No. 53).

not addressed in this order.

As to the claims at issue in Defendants' motion, Plaintiff's First Amendment retaliation claim against defendant Machado is proceeding based on allegations that "Machado threatened Plaintiff by stating to Plaintiff, 'You won't wake up once we get you to administrative segregation,' in response to finding out that Plaintiff had complained about the sexual and physical assault by Swetalla." (ECF No. 9, p. 10; ECF No. 10, p. 2).[4]

Plaintiff's Fourteenth Amendment due process claim again defendants Powers and Cano is proceeding based on allegations that

> Plaintiff was placed in Ad-Seg [Administrative Segregation] because of the sexual assault of Plaintiff by Defendant Swetalla while Plaintiff was housed at CCI, and that Plaintiff was housed in Ad-Seg for almost three months upon his transfer to CSP-LAC even though the assault had been perpetrated by a corrections officer, and not by fellow inmates, and had occurred at a different prison…. Plaintiff was in no danger and that he should have been housed in the general population when he was transferred to CSP-LAC, or at least in non-disciplinary segregation, rather than in Ad-Seg…. [T]he lack of danger to him is further demonstrated by his eventual transfer to general population.

(ECF No. 9, p. 12; ECF No. 10, p. 2).

## III.     SUMMARY JUDGMENT

### a.     Defendants' Motion (ECF No. 38)

Defendants filed a motion for summary judgment on December 16, 2020. (ECF No. 38).

"Defendants Machado, Cano, and Powers move for summary judgment on the grounds that: (1) Plaintiff's retaliation claim against Defendant Machado fails because he cannot show that Machado subjected him to an adverse action, and verbal threats are insufficient to state a constitutional claim; (2) Plaintiff received all of the process he was due as he when he was placed and retained in administrative segregation at LAC for non-disciplinary reasons; (3) Defendant Cano is not liable to Plaintiff for denying Plaintiff's grievance; and (4) Defendants are entitled to qualified immunity." (ECF No. 38-2, p. 2).

---

[4] Plaintiff appears to believe that he has a claim proceeding against defendant Machado based solely on defendant Macahdo's failure to report crimes against Plaintiff to his supervisor. However, this action is not proceeding on any such claim.

3

Defendants argue that "Plaintiff cannot demonstrate a nexus between his reporting of the alleged assault by Defendant Swetalla, and the alleged retaliation by Defendant Machado. Although Plaintiff claims that Machado refused to conduct an investigation into the claims of physical and sexual assault, the undisputed evidence establishes that the PREA investigation was conducted by Officer Nicholson. Plaintiff claimed that during a strip search, an unidentified officer had touched his buttock, but Plaintiff denied penetration of his anus or other inappropriate touching. When asked to identify the officer, Plaintiff would not say any more." (Id. at 6) (citations omitted).

"To the extent that Plaintiff claims that Machado threatened him because Plaintiff made allegations of sexual assault, Plaintiff fails to establish when or where the incident took place. Machado began to prepare an administrative segregation placement notice on November 4, 2015, but the undisputed evidence shows that Plaintiff remained in the Outpatient Housing Unit (OHU), where he was placed on suicide watch and monitored by medical staff. The following day, Plaintiff was transferred to a crisis bed at another institution. Plaintiff was not placed into administrative segregation until he arrived at LAC on November 16, 2015. And[,] Defendant Machado was not responsible for the decision to place Plaintiff into administrative segregation at LAC; rather, this decision was made by Lt. Legler." (Id.) (citations omitted).

"To the extent Plaintiff is claiming that he was threatened or called names by Defendant Machado, such an allegation fails to state a claim for relief. 'Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.' *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987). *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (name calling and verbal threats are not constitutional violations cognizable under section 1983); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.) (1983) (mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations). Here, there is no adverse action that can be attributed to Defendant Machado as a result of Plaintiff reporting the alleged assault by Defendant Swetalla. Accordingly, Defendant Machado is entitled to summary judgment." (ECF No. 38-2, pgs. 6-7) (alteration in original).

As to Plaintiff's due process claim, Defendants argue that Plaintiff received all of the

process that he was due.  (Id. at 10).  "Following Plaintiff's report that he was physically and sexually assaulted by an unnamed and unknown officer, and that he feared for his safety, Plaintiff was transferred first to a mental health crisis bed at CMC and then to LAC while an investigation into his allegations could be completed.  Plaintiff remained in administrative segregation at LAC throughout the duration of the investigation into Plaintiff's claims of staff misconduct."  (Id.) (citations omitted).

"When Plaintiff arrived at LAC, he received an administrative segregation notice indicating that Plaintiff had been sent to LAC via special transport, but had not been endorsed for transfer to that institution.  The notice also mentioned the investigation at CCI into Plaintiff's allegations of staff misconduct.  The notice advised Plaintiff that he would remain in administrative segregation pending the completion of the investigation at CCI and his transfer to his endorsed institution."  (Id. at 11) (citations omitted).

"Plaintiff first appeared before the Classification Committee at LAC on November 25, 2015.  The Committee noted that Plaintiff's placement in administrative segregation was ordered by Lieutenant Legler, and was reviewed by Captain Moore.  Officials at LAC had not received documentation on the investigation, and Plaintiff was advised that he would be retained in administrative segregation at LAC until the Investigative Services Unit at CCI provided the necessary documentation.  Plaintiff advised the Committee that he agreed with the decision."  (Id.) (citations omitted).

"Plaintiff next appeared before the Classification Committee at LAC on January 21, 2016, and was told by the Committee that the investigation at CCI was completed, and Plaintiff would be released to SNY.  Plaintiff was released from administrative segregation on February 11, 2016."  (Id.) (citations omitted).

"Based on the holdings of _Toussaint I_ and _Hewitt_, Plaintiff received all of the process he was due.  Plaintiff was advised of the reasons for his placement into administrative segregation, and he appeared before the Committee two times between his placement on November 16, 2015, and his release to SNY on February 11, 2016."  (Id.) (citation omitted).

Defendants also argue that "the undisputed evidence establishes that Defendant Cano

5

was not responsible for placing Plaintiff into administrative segregation, but rather, Defendant Cano denied Plaintiff's grievance regarding Plaintiff's placement into administrative segregation at the second level of review because of the ongoing investigation into Plaintiff's allegations." (Id. at 11-12) (citation omitted). "Defendant Cano did not place Plaintiff into administrative segregation, nor did he retain Plaintiff in administrative segregation beyond the time necessary to complete the investigation into Plaintiff's allegations." (Id. at 12) (citation omitted).

Finally, Defendants argue that they are entitled to qualified immunity.

"Plaintiff cannot demonstrate that Defendants Powers and Cano violated his right to due process by placing or retaining Plaintiff into administrative segregation during an investigation, or retaining him there until Plaintiff could be properly transferred to an endorsed facility." (Id. at 13-14). "Moreover, Defendants could have reasonably believed that their actions were legal. The policies of CDCR allow for such placement and retention in administrative segregation. See Cal. Code of Regs., tit. 15, §3335(a). Prison officials implementing policies are entitled to qualified immunity if, in the light of the clearly established law at the time, a reasonable official could have believed that the conduct was lawful." (Id. at 14) (citation omitted).

Additionally, "[t]o the extent Plaintiff is suing Defendant Powers for failing to grant Plaintiff's grievance and release Plaintiff from administrative segregation, the denial of a grievance fails to state a constitutional violation. Moreover, as Defendant Cano explained in the second level response, it was Cano's belief that based on CDCR policies and procedures, Plaintiff was properly retained in administrative segregation until the investigation into Plaintiff's allegations of staff misconduct was concluded. However, Cano arranged [for] another Committee hearing to determine whether Plaintiff should continue to be housed in administrative segregation. For these reasons as well, Defendant Cano is entitled to qualified immunity." (Id. at 14) (citations omitted).

In support of their motion, Defendants submit records regarding Plaintiff's bed assignments, memoranda regarding the staff misconduct alleged by Plaintiff, Administrative Segregation Unit Placement Notices, Classification Reviews for Plaintiff, a copy of a grievance

submitted by Plaintiff, a copy of the response to Plaintiff's grievance, and medical records.[5]

> b. <u>Plaintiff's Opposition (ECF No. 41)</u>

Plaintiff argues that defendants Cano and Powers violated his Fourteenth Amendment rights. (ECF No. 41, p. 2). Plaintiff was supposed to be put in non-disciplinary segregation, but he was not classified as such. (<u>Id.</u>). This created untold suffering and an atypical hardship on him. (<u>Id.</u>). Plaintiff was shackled by his hands and feet to shower, attend group, or to go anywhere within the prison. (<u>Id.</u>). Under prison regulations, Plaintiff was required to be taken out of his oppressive environment within seventy-two hours. (<u>Id.</u>). However, defendants Cano and Powers failed to follow the law. Additionally, "[n]either defendant afforded the programs and privileges he was entitled to, they did not document these facts or why they were being denied, and they did not state why these things were being restricted or the duration of these CCR Title 15 rights." (<u>Id.</u> at 12). Moreover, "[u]nder their own laws, the defendants were <u>required</u> to transfer the plaintiff to an appropriate institution within 72 hours, instead, they kept the plaintiff in a needlessly restrictive and oppressive housing environment without just cause. (CCR Title 15 § 3335(A)." (<u>Id.</u>).

For almost three months, "[r]ather than be[ing] free to attend groups, recreation, showers, or walk or move without being shackled by his hands and feet, the plaintiff had to suffer extreme measures reserved for those individuals committing crimes or rules violations." (<u>Id.</u> at 15).

Plaintiff also alleges that he never agreed with Defendants retaining him in Ad-Seg, and this is corroborated by the grievance he filed. (<u>Id.</u> at 13).

Plaintiff also alleges that defendants Cano and Powers had authority to place Plaintiff into Ad-Seg. (<u>Id.</u> at 14).

Plaintiff also alleges that he was never classified as Non Disciplinary Segregation ("NDS"), even though he should have been. (<u>Id.</u>). Defendant Powers stated that she did not have enough information "to make the plaintiff NDS." (<u>Id.</u> at 16). "The label of Non

---

[5] Defendants did not submit any declarations as evidence, including any declaration from any defendant.

Disciplinary Segregation lets the staff as well as the institution know that the person is entitled to less restrictions than other prisoners because he is not there for breaking the rules. This classification, that neither of these defendants were then concerned about[,] was their responsibility." (Id. at 14).

Plaintiff also alleges that defendant Cano had the authority to release Plaintiff to the general population Special Needs Yard. (Id. at 14).

Plaintiff also argues that both defendant Powers and defendant Cano had personal knowledge and personal involvement "in plaintiff's case. Both of these individuals attended the ICC (Inmate Classification Committee) of the plaintiff…." (Id. at 17).

Plaintiff also alleges that neither defendant allowed him to present a written or oral statement as to why he should not be kept in Ad-Seg. (Id.). "Most importantly, Cano was at plaintiff's committee in January, and he did not allow the plaintiff to submit documents." (Id.).

Finally, Plaintiff argues that defendant Powers and defendant Cano are not entitled to qualified immunity. (Id. at 18). "[B]oth of these defendants have been doing their jobs for many years, and each defendant is well aware of the rules, rights, and regulations it takes to legally do their duties while working under color of authority. The plaintiff's rights were well established at the time of their actions, and even after plaintiff filed a formal complaint objecting to his situation, neither defendant did as much as look into why the plaintiff was illegally retained in a situation that required him to be shackled [sic] hand and feet [sic] to do as much as sit in a chair." (Id.).

As to defendant Machado, on November 4, 2015, Plaintiff alleges that he spoke to defendant Machado about being physically and sexually assaulted by defendant Swetalla. (Id. at 8). "Once the plaintiff began telling defendant Machado his staff [were] abusive and corrupt, he became enraged and threatened the plaintiff with death for reporting the crimes of his subordinates. This was done for no other reason than to chill the First Amendment rights of the plaintiff." (Id.).

Plaintiff alleges that none of the statements within Defendants' "undisputed facts" are true. (Id. at 12).

8

Plaintiff's opposition and his concise statement of disputed facts are sworn to under penalty of perjury. Additionally, in support of his opposition, Plaintiff submits, among other things, discovery responses from Defendants, Administrative Segregation Unit Placement Notices, memoranda regarding Plaintiff's allegations of sexual assault by staff, a copy of a grievance submitted by Plaintiff, and a copy of the response to Plaintiff's grievance.

### c. Defendant's Reply (ECF No. 42)

Defendants reiterate arguments that they made in their motion for summary judgment.

Defendants also argue that, "[i]n his opposition, Plaintiff does not set forth any of Defendants' thirty-seven undisputed facts, nor does he dispute any of those facts. Instead, Plaintiff re-asserts the claims set forth in the Complaint, and relies on argument, inadmissible assertions that lack foundation, and unsupported conclusions of law in an attempt to create a dispute regarding his claims for retaliation and denial of due process. In fact, Plaintiff offers no opposition to Defendants' motion for summary judgment, instead, he points the Court to Plaintiff's statement of undisputed facts. But, Plaintiff's statement of facts is made up of seven 'facts' that are nothing more tha[n] argument." (ECF No. 42, p. 2).

"Plaintiff has failed to oppose any of Defendants' undisputed facts, or provide any evidence to support his claims against the Defendants. Thus, Plaintiff has failed to create a genuine dispute of material fact with regard to his retaliation or due process claims, and therefore, the Court should grant Defendants' motion for summary judgment." (Id. at 2-3).

### d. Plaintiff's First Supplemental Opposition and Supporting Declaration (ECF Nos. 48 & 49)

In Plaintiff's first supplemental opposition, Plaintiff refers to defendant Machado's supplemental discovery responses. Plaintiff argues that defendant Machado intentionally misled the Court again. (ECF No. 48, p. 2). Plaintiff also argues that defendant Machado failed "to do his legal and professional duty to report the crimes against plaintiff to his supervisors." (Id. at 4).

Plaintiff also reiterates arguments he made in his opposition.

Attached to Plaintiff's declaration is "the alleged investigation of M. Nicholson." (ECF

No. 49, p. 1).  Plaintiff alleges that Nicholson lied in the report.  (<u>Id</u>. at 1-2).  Plaintiff also alleges that defendant Nicholson never spoke to defendant Swetalla or anyone else regarding the physical or sexual assault.  (<u>Id</u>. at 3).

Plaintiff alleges that defendants Cano and Powers both claim they were waiting for an investigation to be completed before releasing Plaintiff from Ad-Seg, but "the trouble with this is, there was no 'investigation.'"  (<u>Id</u>.).  "It is shown by documents that Nicholson concluded his incomplete delve into this matter on November 5, 2015.  Page 4 of 4 states: 'This concludes ISUs involvement in this matter.'  Certainly the high ranking Chief Deputy Warden and Lieutenant (CCII) doing the committee for plaintiff knew this much."  (<u>Id</u>.).

"This goes to [sic] for the investigation of Lieutenant Parriott that was concluded on November 22, 2015."  (<u>Id</u>.).  "[N]either of these individuals bothered to interview the plaintiff, the defendants, or anyone else even remotely related to these incidents."  (<u>Id</u>.).

e.  <u>Plaintiff's Second Supplemental Opposition (ECF No. 54)</u>

In his second supplemental opposition, Plaintiff reiterates arguments made in his previous filings.

Plaintiff also cites to California Code of Regulations, Title 15, § 3335(a)(1)(D)(1), which states: "If the placement in NDS is related to being the victim of a PREA incident, the inmate will be afforded all programs, privileges, and education in accordance with section 3044 and subsection 3190(b)(5)(C), of Title 15 of the CCR.  If these are restricted, assigned staff shall document: 1) the opportunities that have been limited; 2) the duration of the limitation; and 3) the reasons for such limitations."  Plaintiff also cites to, § 3335(a)(1)(D)(2), which states: "The facility shall assign such inmates to NDS only until an alternative means of separation from likely abusers can be arranged, and such an assignment shall not ordinarily exceed a period of 30 days.  If the period of segregation exceeds 30 days, reasoning shall be documented on an automated Classification Committee Chrono (05/19), which is incorporated by reference."[6]

---

[6] This section was amended after the incidents alleged in the complaint occurred.  However, the amendment is not material, and the Court will also refer to the current language.

Plaintiff alleges that defendant Powers was aware of these sections. (ECF No. 54, p. 3).

"It is well documented that neither of the so-called ISU investigations at CCI went any further than a cursory review of plaintiff's complaints of sexual assault. Each 'investigation' was completed well ahead of defendant Powers' handling of plaintiff's ad-seg placement. Yet defendant Powers accepted no verbal or documentary evidence or defense to plaintiff being placed in the ad-seg unit at CSP-LAC. The appeal states all of these things." (Id. at 4).[7]

  f. Discussion

    i. *Legal Standards for Summary Judgment*

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must

---

[7] In his oppositions, Plaintiff makes numerous allegations and arguments that are not relevant to the resolution of this motion for summary judgment, including arguments regarding why summary judgment should be denied as to defendant Swetalla (who did not move for summary judgment). Plaintiff also attaches irrelevant evidence. The Court will not address irrelevant factual allegations, arguments, or evidence. The Court also notes that, at times, Plaintiff does not accurately portray what Defendants stated in their discovery responses.

determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255.

### ii. *Failure to Properly Oppose Motion*

In their reply, Defendants argue that Plaintiff failed to properly oppose their motion. Defendants are correct that Plaintiff did not strictly comply with Federal Rule of Civil Procedure 56 or this Court's local rules. However, while "an ordinary pro se litigant, like other litigants, must comply strictly with the summary judgment rules," "[p]ro se inmates are … expressly exempted from this rule…." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." (Id.).

Accordingly, even though Plaintiff failed to strictly comply with Federal Rule of Civil Procedure 56 and this Court's local rules, the Court will still consider Plaintiff's oppositions

\\\

\\\

and the evidence he submitted.[8]

### iii. *Plaintiff's Retaliation Claim Against Defendant Machado*

#### 1. *Legal Standards*

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

#### 2. *Analysis*

Defendants move for summary judgment on three grounds. First, Defendants argue that Plaintiff cannot demonstrate a nexus between his reporting of the alleged assault by defendant Swetalla and the alleged retaliation by defendant Machado. Second, Defendants argue that Plaintiff cannot establish when or where the incident took place. Finally, Defendants argue that there was no adverse action because verbal harassment or abuse is insufficient to state a constitutional deprivation under § 1983.

All three arguments fail. Plaintiff states, under penalty of perjury, that on November 4, 2015, "[u]pon being interrogated at the C yard program while in a holding cage," he spoke to defendant Machado about being physically and sexually assaulted by defendant Swetalla. (ECF No. 43, p. at 8). "Once the plaintiff began telling defendant Machado his staff was abusive and corrupt, he became enraged and threatened the plaintiff with death for reporting the crimes of his subordinates. This was done for no other reason than to chill the First Amendment rights of the plaintiff." (Id.). Thus, Plaintiff submitted evidence that the adverse action occurred immediately after, and because, he complained about staff misconduct. Accordingly, Plaintiff sufficiently linked the adverse action to his complaints about staff misconduct.

---

[8] The Court notes that, to the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on evidence it considered to be admissible. Generally, it is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment.

Additionally, as described above, Plaintiff states, under penalty of perjury, where the incident occurred (at the C yard program), and when (November 4, 2015). Accordingly, Plaintiff submitted evidence regarding when and where the incident took place.

Finally, as to Defendants' third argument, Defendants appear to misunderstand the relevant law. While Defendants are correct that, in the Eighth Amendment context, verbal harassment alone is generally insufficient to state a claim, Plaintiff is proceeding on a First Amendment retaliation claim, not an Eighth Amendment harassment claim. And, in the retaliation context, "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009).

Accordingly, Defendants' motion should be denied as to Plaintiff's First Amendment retaliation claim against defendant Machado.

### iv. *Plaintiff's Due Process Claim Against Defendants Cano and Powers*

#### 1. *Legal Standards*

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. Ingraham v. Wright, 430 U.S. 651, 672-73 (1977).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. Wolff established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v.

Brewer, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  Id. at 566.  And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or … to have adequate substitute aid … from the staff or from a[n] … inmate designated by the staff."  Id. at 570.

However, "when prison officials initially determine whether a prisoner is to be segregated for administrative reasons due process only requires the following procedures: Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated.  The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation.  Prison officials must allow the prisoner to present his views."  Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986) (footnote omitted), abrogated on other grounds, Sandin v. Conner, 515 U.S. 472 (1995).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by Plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232. To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

## 2. *Analysis*

In their motion, Defendants claim that the more limited Toussaint procedures apply here, and that defendants Cano and Powers complied with these procedures.

According to Defendants, Plaintiff was placed and retained in Ad-Seg for administrative reasons, not because he was being disciplined. "Under the California Code of Regulations, title 15, section 3335(a), '[w]hen an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an allege[d] serious misconduct or criminal activity, the inmate shall be immediately removed from general population and placed in administrative segregation.'" (ECF No. 38-2, pgs. 10-11) (quoting Cal. Code regs, tit. 15

\\\

§3335(a)) (alteration in original).[9]

Moreover, Defendants allege that Plaintiff was placed into administrative segregation not to discipline him, but "pending the completion of the investigation at CCI and his transfer to his endorsed institution." (Id. at 11). In support of their position, Defendants submit an administrative segregation notice, which states that Plaintiff was housed in Ad-Seg because he was "not endorsed to LAC. In addition on 11/4/2015 [Plaintiff] [was] originally placed in ADSEG at (CCI) due to allegations [Plaintiff] made of staff sexual misconduct towards [Plaintiff] which necessitated an investigation of said allegations. Due to the aforementioned, [Plaintiff] will be housed in (LAC) AD-SEG pending completion of the investigation and transfer to [Plaintiff's] endorsed institution. [Plaintiff's] placement in AD-Seg is a NON adverse placement." (ECF No. 38-3, p. 24). Additionally, the November 25, 2015 Classification Committee and the January 28, 2016[10] Classification Committee both stated that Plaintiff was retained in Ad Seg, at least in part, because an investigation was ongoing. (ECF No. 38-3, p. 31; ECF No. 38-3, p. 36).

According to Plaintiff, however, he was actually being disciplined, and is thus entitled to the more stringent Wolff procedures. Plaintiff has submitted some evidence in support of this contention. According to Plaintiff, no real investigation took place. To support this assertion, Plaintiff submits a discovery response from defendant Swetalla, who admits that defendant Swetalla was never interviewed. (ECF No. 41, p. 109). Plaintiff also alleges that the investigations actually ended in November of 2015. (ECF No. 49, p. 3). In support of this assertion, Plaintiff cites to the dates on two investigative reports. (ECF No. 49, p. 3).

Additionally, Plaintiff has presented evidence that the procedures for non-disciplinary administrative segregation, as set forth in the California Code of Regulations, were not

---

[9] Plaintiff argues that Defendants should not be allowed to rely on Title 15 because defendant Cano stated that Title 15 does not exist in response to a discovery request. (ECF No. 41, p. 12). However, defendant Cano did not say that Title 15 does not exist. He stated that § 3335(a)(D)(1)(2)(A) does not exist (ECF No. 41, pgs. 84-85), and he appears to be correct.

[10] In their motion, Defendants refer to the hearing as occurring on January 21, 2016. However, the document they attach to support their assertion states that the hearing was held on January 28, 2016. (ECF No. 38-3, p. 37). As the evidence states that the hearing occurred on January 28, 2016, the Court will use this date.

followed. According to California Code of Regulations, Title 15, § 3335(a)(1)(d)(1), "[i]f the placement in NDS is related to being the victim of a PREA incident, the inmate will be afforded all programs, privileges, and education in accordance with section 3044 and subsection 3190(b)(5)(C), of Title 15 of the CCR. If these are restricted, assigned staff shall document: 1) the opportunities that have been limited; 2) the duration of the limitation; and 3) the reasons for such limitations." According to § 3335(a)(1)(d)(2), "[t]he facility shall assign such inmates to NDS only until an alternative means of separation from likely abusers can be arranged, and such an assignment shall not ordinarily exceed a period of 30 days. If the period of segregation exceeds 30 days, reasoning shall be documented on an automated Classification Committee Chrono (05/19), which is incorporated by reference."

While Plaintiff challenges how much of an investigation actually occurred, it is undisputed that the investigation(s) involved his allegations of sexual assault. According to Plaintiff's sworn statement, despite the existence of the above regulations, "[n]either defendant afforded the programs and privileges he was entitled to, they did not document these facts or why they were being denied, and they did not state why these things were being restricted or the duration of these CCR Title 15 rights." (ECF No. 41, p. 12). Additionally, it is undisputed that Plaintiff was held in Ad-Seg for more than thirty days, and there is no evidence that the procedures laid out in § 3335(a)(1)(d)(2) were followed.

Moreover, at least one defendant admitted that Plaintiff was not given NDS status. (See ECF No. 41, p. 93 (in response to Interrogatory 3, which asked why Plaintiff was not put on NDS status, defendant Powers stated that "Plaintiff was not placed on NDS as the investigation at CCI was not closed before Plaintiff's initial appearance before the Committee, and the Committee did not have enough information to grant NDS"); id. at 100 (in response to Request for Admission 6, in which Plaintiff asked defendant Powers to "Admit that you did not place plaintiff Peralta on non-disciplinary segregation (NDS) at any time between the dates of 11/16/15 and 2/10/16 while he was housed in administrative segregation at CSP-LAC," defendant Powers responded "Admitted, as the Committee did not have the necessary documentation during Plaintiff's initial classification hearing.")). However, the relevant

regulation states that "Non Disciplinary Segregation (NDS) means temporary segregated housing placement for administrative reasons to include but are not limited to … Investigation[s] related to being the victim of a Prison Rape Elimination Act (PREA) incident." § 3335(a)(1)(D).

Finally, as discussed in more detail below, Plaintiff has presented evidence that he was not allowed to present his views at the November 25, 2015 Classification Committee, and the Committee erroneously documented that Plaintiff agreed with his placement.

Based on the evidence, the Court recommends the motion be denied as to Plaintiff's claim against defendant Powers and granted as to Plaintiff's claim against defendant Cano.

As to defendant Powers, it is undisputed that she was on the November 25, 2015 Classification Committee. (ECF No. 38-3). Defendants do not even attempt to argue that the Wolff procedures were provided at this hearing. Thus, if the Wolff procedures apply, Defendants' motion should be denied as to defendant Powers.

Defendants do argue that the Toussaint procedures were provided, but the Court finds that there is a genuine dispute of material fact regarding whether Plaintiff was given an opportunity to present his views, as required even under the more limited Toussaint procedures. The only evidence Defendants submit in support of their assertion that Plaintiff was allowed to present his views is the Classification Committee's report, which states that Plaintiff "acknowledged his understanding and agreement with committee's decision." (ECF No. 38-3, p. 31). Plaintiff counters this evidence with his own sworn statement, in which he alleges that he never agreed with being retained in Ad-Seg and that he was not allowed to present his views at the hearing. (ECF No. 41, p. 13; ECF No. 41, p. 17). In support of his sworn statement, Plaintiff refers to a grievance he filed after the hearing, in which he states that he should not be held in Ad-Seg pending the investigation and that he was not allowed to make a statement concerning the Ad-Seg placement. (ECF No. 38-3, pgs. 39 & 41). Therefore, there is a dispute of fact regarding whether Plaintiff was allowed to present his views at the November 25, 2015 hearing, and thus whether he received all process that was due even for non-disciplinary administrative segregation.

Additionally, the Court finds that defendant Powers is not entitled to qualified immunity. As discussed above, the facts shown by Plaintiff make out a violation of his constitutional rights. Moreover, the procedures required when an inmate is disciplined in a way that causes him to be deprived of a liberty interest have been clearly established since at least 1974, which is when <u>Wolff</u> was decided, and the procedures required when an inmate is segregated for administrative purposes appear to have been clearly established since at least 1986, which is when <u>Toussaint</u> was decided.[11] And here, at the very least, there is a genuine dispute of material fact regarding whether defendant Powers provided the required procedures. Thus, construing disputed facts in favor of Plaintiff, the right defendant Powers violated was clearly established at the time of her alleged misconduct in 2015.

Drawing all reasonable inferences in Plaintiff's favor, and taking Plaintiff's evidence as true, defendant Powers did not follow procedures that were clearly required by case law. Accordingly, defendant Powers is not entitled to qualified immunity, and Defendants' motion for summary judgment should be denied as to Plaintiff's claim against defendant Powers.

The analysis as to defendant Cano is different. Plaintiff has not submitted competent evidence that defendant Cano was responsible for any violation of his Fourteenth Amendment due process rights.

It is undisputed that defendant Cano responded to Plaintiff's grievance complaining about his retention in Ad-Seg. (ECF No. 38-3, pgs. 43-44). However, while defendant Cano stated that Plaintiff's retention in Ad-Seg was not a mistake, defendant Cano did not deny Plaintiff's grievance. Instead, he granted it in part and ordered that Plaintiff be given a new Classification Committee hearing within fourteen days. (<u>Id.</u> at 44). He also attended the new hearing, and at the new hearing, Plaintiff was ordered released from Ad-Seg, which is the

\\\

---

[11] While portions of the <u>Toussaint</u> decision are no longer good law, courts in this circuit have continued to require the procedures described above. <u>See, e.g.</u>, <u>Moreno v. Terhune</u>, 84 F. App'x 818, 819-20 (9th Cir. 2003); <u>Tapia v. Alameida</u>, 2006 WL 842470, at *6 (E.D. Cal. Mar. 29, 2006); <u>Dixon v. Gonzales</u>, 2011 WL 5526110, at *4 (E.D. Cal. Nov. 14, 2011), <u>report and recommendation adopted</u>, 2012 WL 893146 (E.D. Cal. Mar. 14, 2012); <u>Saavedra v. Scribner</u>, 482 F. App'x 268, 270-71 (9th Cir. 2012).

outcome Plaintiff desired.  (<u>Id.</u> at 34-38).[12]

Thus, there is no competent evidence that defendant Cano was responsible for violating Plaintiff's Fourteenth Amendment due process rights.

Plaintiff argues that instead of providing a new hearing, defendant Cano should have ordered his release because, pursuant to regulations, Plaintiff should have been released within seventy-two hours.  However, Plaintiff misreads the relevant regulation.  The regulation states that "[a]ny *case* designated as NDS, and included in the MHSDS, shall be transferred to an appropriate *institution* within 72 hours of initial designation."  Cal. Code Regs. tit. 15, § 3335(a)(2)(A) (emphasis added).  It does not state that a qualifying inmate must be released from Ad-Seg within seventy-two hours.

To the extent Plaintiff is arguing that defendant Cano is liable because he was the chief deputy warden and was responsible for the conduct of his staff, this argument fails because, as discussed above, there is no *respondeat superior* liability in section 1983 actions.

## IV.    PLAINTIFF'S REQUEST FOR SANCTIONS

Plaintiff raised discovery issues in his oppositions to Defendants' motion for summary judgment, and the Court has addressed some of those issues (<u>see</u> ECF Nos. 46 & 53).  The Court has not yet, however, addressed Plaintiff's request for sanctions.

On March 10, 2021, the Court granted Plaintiff's motion to compel in part.  (ECF No. 46).  The Court gave defendant Cano thirty days to provide Plaintiff with "all documents regarding Peralta being continually held in administrative segregation from 11/16/15 through 2/10/16, including any rule, regulation, reports, or memoranda that Defendant's referred to or relied on in keeping Peralta in administrative segregation as opposed to releasing him to a general population yard at CSP-LAC."  (<u>Id.</u> at 5 & 11) (emphasis removed).  The Court gave defendant Swetalla thirty days to provide Plaintiff with "all documents Defendant Swetalla may

---

[12] The Court notes that it is undisputed that Plaintiff was not immediately released from Ad-Seg after the hearing, but there is no evidence that defendant Cano was in any way responsible for Plaintiff's delayed release. Based on a discovery response from defendant Powers, which Plaintiff submitted in support of his motion, it appears that Plaintiff's release was delayed because there were no Special Needs Yard beds available.  (ECF No. 41, p. 99).

use at trial or otherwise in [his] defense in this case to Peralta's claims against Defendant Swetalla of sexual assault and excessive force." (Id. at 7 & 11) (emphasis removed). The Court gave defendant Powers thirty days to provide Plaintiff with "all non-confidential documents regarding Plaintiff's placement and stay in administrative segregation from 11/16/15 through February 10, 2016, including any classification documents used at Plaintiff's ICC actions you attended between the dates of 11/25/15 and 2/10/16." (Id. at 8 & 11) (emphasis removed). The Court also gave defendant Machado thirty days to respond to three interrogatories in full: 1) Integratory 11, which stated, "Is it your contention that your subordinate officer did not use excessive force or sexually assault Peralta on 10/27/15 and Peralta used this as an excuse to leave the yard due to his 'debt;'" 2) Interrogatory 12, which stated "Are you aware of the fact that Peralta has went to custody staff on at least four or five occasions because he was assaulted by other prisoners, during this term under the CDC # P-33314;" and 3) Interrogatory 14, which stated "Is it your contention that plaintiff Peralta did not report the crimes of sexual assault and excessive force to you on 11/4/15 regarding your subordinate staff on facility C at CCI." (Id. at 8-10; id. at 11). The Court also required Defendants to file a notice indicating that they complied with the Court's order. (Id. at 11).

At the time, the Court did not sanction defense counsel. Instead, the Court allowed Plaintiff to file a supplement to his opposition. (Id. at 4).

As Defendants failed to timely file a notice of compliance with the Court's order on Plaintiff's motion to compel, on April 23, 2021, the Court directed them to file the notice. (ECF No. 47).

In his first supplemental opposition, which was filed on April 28, 2021, Plaintiff alleges that Defendants failed to comply with the Court's order on the motion to compel. (ECF No. 48, p. 1). According to Plaintiff, "Defendant Powers refused to provide any requests as ordered by this court and should be precluded from presenting any documents at all before, during, or after trial." (Id.). Additionally, "Defendant Cano may have produced documents, but the plaintiff is not certain of this fact as plaintiff did receive inmate appeal documents from Lancaster Prison, but they have defendant Swetalla as being the propounding party of said documents." (Id. at

22

2). Finally, Plaintiff appears to allege that defendant Machado lied in his supplemental discovery responses. (Id.). "Plaintiff respectfully requests sanctions against defendant Powers for her complete failure to produce documents as ordered by this court, and possibly against defendant Cano if the documents with Swetalla's name on them are not his." (Id.).

On April 30, 2021, Defendants filed their notice of compliance, which they corrected on May 3, 2021. (ECF Nos. 50-52). In their filing, Defendants state that they have complied with the Court's order. (ECF No. 52). However, they admit that, "[d]ue to inadvertent error," defendant Powers' supplemental responses were not timely served on Plaintiff. (ECF No. 52, p. 2). Instead, the documents were served concurrently with the April 30, 2021 filing. (ECF No. 50, p. 2).

Based on the facts presented to the Court, Defendants did not timely provide Plaintiff with defendant Powers' supplement responses, despite being ordered to do so.[13] However, as the Court allowed Plaintiff to file another supplemental opposition after he received the supplemental responses, and as Defendants indicate that the documents that were not timely provided by defendant Powers were previously provided by defendant Cano (ECF No. 52, p. 2), the Court once again finds that Plaintiff did not suffer any prejudice. Moreover, there is no evidence that defense counsel was attempting to hide any documents or to delay providing the responses. Accordingly, the Court will not preclude defendant Powers from presenting documents "before, during, or after trial."

However, as Defendants failed to produce all of the discovery even after the Court granted Plaintiff's motion to compel, the Court will order Defendants' counsel to pay the expenses, if any, that Plaintiff incurred in filing his request for sanctions (ECF No. 48, pgs. 1-2), which argued that Defendants failed to comply with the Court's order on Plaintiff's motion to compel, as well as the expenses Plaintiff incurred in filing his second supplemental

---

[13] In Plaintiff's second supplemental reply, Plaintiff alleges that Defendants still have not provided all the discovery required by the Court. (ECF No. 54, p. 1). However, Plaintiff also states that he does not want the Court to order more discovery, unless the Court thinks it is "absolutely necessary," and that "[n]othing else is requested from any of these defendants." (Id. at 5). As Plaintiff does not appear to want the Court to order any additional discovery, and as Plaintiff does not request any additional sanctions, the Court will not address the issue of whether Defendants once again failed to comply with this Court's orders.

opposition (ECF No. 54), which Plaintiff would not have even been allowed to file had Defendants complied with this Court's order (see ECF No. 53). See Fed. R. Civ. P. 36(b)(2)(A), (C) (if a party "fails to obey an order to provide … discovery," "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."). Such expenses may include the costs for copies in connection with Plaintiff's request for sanctions (ECF No. 48, pgs. 1-2) and Plaintiff's second supplemental opposition (ECF No. 54).

Plaintiff will be required to file a notice indicating the expenses, if any, he incurred in filing his request for sanctions and his second supplemental opposition within thirty days from the date of service of this order. If possible, Plaintiff should attach proof of his expenses. Defendants' counsel will be given thirty days from the date the notice is filed to either pay the expenses or file an objection to the expenses listed by Plaintiff.

## V.    RECOMMENDATIONS AND ORDER

Based on the foregoing, the undersigned HEREBY RECOMMENDS that Defendants' motion for summary judgment be granted as to Plaintiff's Fourteenth Amendment due process claim against defendant Cano and denied as to Plaintiff's First Amendment retaliation claim against defendant Machado and Plaintiff's Fourteenth Amendment due process claim against defendant Powers.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, **IT IS ORDERED** that Plaintiff's request for sanctions is granted in part. Plaintiff has thirty days from the date of service of this order to file a notice indicating the expenses, if any, he incurred in bringing his request for sanctions (ECF No. 48, pgs. 1-2) and his second supplemental opposition (ECF No. 54). Defendants' counsel has thirty days from the date the notice is filed to either pay the expenses or file an objection to the expenses listed by Plaintiff.

IT IS SO ORDERED.

Dated: **July 8, 2021**

/s/ *Erica P. Grosjean*

UNITED STATES MAGISTRATE JUDGE